JOSEPH HEARNE, Plaintiff-Appellee and Cross-Appellant, v. THE CHICAGO SCHOOL REFORM BOARD OF TRUSTEES OF THE BOARD OF EDUCATION FOR THE CITY OF CHICAGO *et al.*, Defendants-Appellants and Cross-Appellees.

First District (1st Division)   No. 1—99—1385

Opinion filed May 7, 2001.—Rehearing denied June 6, 2001.

Marilyn F. Johnson, Nancy K. Laureto, and Kelly A. Skalicky, all of Chicago Board of Education, for appellant Chicago School Reform Board of Trustees of the Board of Education for the City of Chicago.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor

General, and Michael P. Doyle, Assistant Attorney General, of counsel), for appellant Illinois State Board of Education.

Witwer, Poltrock & Giampietro, of Chicago (Lawrence A. Poltrock, Gregory N. Freerksen, and James B. Dykehouse, of counsel), for appellee.

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Defendant Chicago School Reform Board of Trustees of the Board of Education for the City of Chicago (Board) appeals the circuit court's reversal of its decision to terminate plaintiff, Joseph Hearne, a tenured Chicago public school teacher. Plaintiff has filed a cross-appeal against the Board and the Illinois State Board of Education challenging the constitutionality of section 34—85 of the Illinois School Code (105 ILCS 5/34—85 (West 1994)), as amended by Public Act 89—15 (Pub. Act 89—15, eff. May 30, 1995)). This statute governs dismissal of principals and tenured teachers in the Chicago public schools. The circuit court granted plaintiff's request under count I and reversed the Board's decision to dismiss Hearne. The circuit court also granted plaintiff's constitutional relief requested in count III, finding that section 34—85 as amended by Public Act 89—15 was unconstitutional.

The Board and the Illinois State Board of Education then directly appealed the circuit court's ruling to the Illinois Supreme Court. The supreme court, however, remanded the case to the circuit court. The supreme court found that, because the circuit court granted plaintiff administrative relief, the circuit court improperly considered the constitutional issues regarding amended section 34—85. The supreme court ordered the circuit court to modify its October 20, 1997, order "to exclude the ruling that section 34—85 is unconstitutional." *Hearne v. Illinois State Board of Education*, 185 Ill. 2d 443, 457 (1999). On March 18, 1999, the circuit court excluded its constitutionality finding and granted plaintiff administrative relief. The Board appeals from this order and claims that the circuit court erred in granting plaintiff administrative relief and reversing the decision of the Board to terminate plaintiff. We affirm the circuit court's order granting plaintiff administrative relief; therefore, we need not address plaintiff's cross-appeal that section 34—85 as amended by Public Act 89—15 is unconstitutional.

## I. BACKGROUND

Plaintiff, a tenured Chicago public school teacher, had been employed as a teacher for 18 years. Plaintiff was certified in special education and social studies for kindergarten through grade 12. He was teaching at the Austin Community High School (Austin). On September 6, 1995, Paul Vallas, the Board's chief executive officer and

general superintendent, approved charges against plaintiff for conduct unbecoming a teacher and gross dereliction of duties. Three specific acts of misconduct from May 1995 were alleged to have been committed by plaintiff: (1) plaintiff was arrested for gambling with his students in his classroom during instructional time; (2) plaintiff took students to a theater as part of a field trip and did not pay admission for 11 students; and (3) as part of the same field trip, plaintiff took the students to a restaurant and paid the bill with his personal check without sufficient funds in his account to cover the check. Vallas informed plaintiff that, because the conduct giving rise to the charges was deemed irremediable, plaintiff would be discharged unless he petitioned for a dismissal hearing pursuant to section 34—85. Plaintiff requested a dismissal hearing. Vallas suspended plaintiff without pay pending the outcome of the hearing.

The dismissal hearing was held before a state-appointed hearing officer during December 1995. The case against plaintiff was presented by an attorney from the Board's legal department, who called two witnesses. William Walker, a Chicago police officer and security officer at Austin, testified that on May 8, 1995, plaintiff called him to his classroom. Walker testified that plaintiff told Walker that students were gambling in his class and that he allowed gambling to take place. Walker indicated that he saw students handling cards at a table in plaintiff's classroom. According to Walker, plaintiff said to one of the students "you're going to give me my cut," the student pulled out $2 and plaintiff took the $2 from the student. Walker immediately left the classroom and reported the incident to the school's principal. Walker did not confiscate any cards or money from the classroom and admitted that he was present in the classroom for only two to three minutes.

James Williams, the principal of Austin, testified that Officer Walker came to his office and reported that he observed gambling in plaintiff's classroom. Williams never went to the classroom. Williams also interviewed the students allegedly involved in the gambling incident; however, these students did not testify. Williams then prepared an incident report and notified Vallas and the Board.

Williams also testified about plaintiff's alleged misconduct regarding the student field trip. Williams testified that he approved the student field trip on May 4, 1995, to the ETA theatre and Shakey's pizza, and that plaintiff was responsible for paying the theatre and Shakey's pizza. After the trip, the ETA theatre called him and reported that the school still owed the theatre $33. Williams asked plaintiff about the money that was owed the theatre and plaintiff said that he would pay it. Within the next two weeks, the theatre continued to call

about the money owed. Plaintiff had been transferred from Austin following the gambling charges, and Williams referred the theatre to the Board's legal department. Williams received a similar call from Shakey's pizza about an unpaid bill. Williams told the manager of Shakey's pizza that the unpaid balance was plaintiff's responsibility because the school had reimbursed plaintiff for this expense. Williams spoke with plaintiff and plaintiff stated that he would pay the pizza bill.

Plaintiff testified on his own behalf and called as witnesses three students who supported his testimony. These students were not the same students allegedly involved in the gambling incident. Plaintiff and the three student witnesses refuted the allegations of gambling. During the period when the gambling allegedly occurred, plaintiff testified that students, who had lunch during this period, routinely used his classroom to study while he worked with his special education students in another part of the classroom. Plaintiff testified that on the morning of the day of the alleged gambling incident, he had asked a student to buy some juice and had given the student $2. The student, however, never bought any juice and refused to return the money. Plaintiff then informed Officer Walker of the student's failure to return the $2 and requested Walker's presence in the classroom to pressure the student. Plaintiff testified that he never permitted or allowed any gambling in his classroom. The three students also testified that they did not see gambling in plaintiff's classroom and that plaintiff did not permit gambling to occur.

Regarding the field trip, plaintiff testified that he had payment for theatre admissions from all students authorized for the field trip. When he arrived at the theatre there were students from other schools present. In addition, plaintiff saw about 11 other Austin students or former students at the theatre. They had not used the school bus from Austin to travel to the theatre. The theatre did not take an actual head count, allowed all students inside, and some unauthorized students attended the show. Plaintiff testified that he told the theatre director about the unauthorized students and that he would get payment from these students. Plaintiff never requested that Austin pay for these other students. Plaintiff testified that he planned to get payment from the unauthorized students after the field trip, but, because of his subsequent arrest on gambling charges, he was unable to collect the money. Plaintiff eventually paid the theatre the $33 that was owed.

Plaintiff testified that these unauthorized students also went to Shakey's pizza. The restaurant did not take a head count but allowed everyone into the restaurant. Following the meal, plaintiff received a

bill for $363.30 even though Austin only authorized the plaintiff to spend $228. Plaintiff then provided Shakey's with a postdated check for the full amount of the bill. When he obtained the reimbursement check from Austin, he testified that he mistakenly deposited it into his savings account, rather than his checking account. As the result of his arrest and transfer from Austin, he did not immediately find out that the check was returned unpaid by the bank. After he found out that the check had been returned, he provided Shakey's with a cashier's check for the full amount plus any returned check fee. It was not refuted that both the theatre and Shakey's pizza were paid in full by the plaintiff.

On March 18, 1996, the hearing officer issued written findings of fact, concluding that the Board failed to prove by a preponderance of the evidence that plaintiff was guilty of the three charges. Consequently, the hearing officer recommended that plaintiff be restored to his teaching position with back pay and benefits. The hearing officer's recommended decision was served upon both plaintiff and the Board on March 20, 1996.

On April 24, 1996, Vallas submitted to the Board a written "request for the rejection of [the] hearing officer's decision," stating "[t]he rationale for this recommendation is that the Hearing Officer's decision is contrary to the weight of credible evidence in the case which demonstrated cause for termination under section 34—85." That same day, the Board agreed with the request by Vallas to reject the hearing officer's recommendation and terminated plaintiff for cause. The Board informed plaintiff of its decision on April 27, 1996.

In May 1996, plaintiff filed a verified complaint for administrative review, *mandamus*, and declaratory and injunctive relief in the circuit court. Count I of plaintiff's complaint sought administrative review of the decision of the Board to discharge plaintiff from employment as a teacher. Count II sought plaintiff's reinstatement through the remedy of *mandamus*. Counts III, IV, and V requested the trial court to declare unconstitutional section 34—85 of the School Code, as amended by Public Act 89—15.

On November 4, 1996, the circuit court in an oral ruling from the bench, remanded plaintiff's case to the Board for further consideration. The judge based her decision on two factors: first, the judge could not discern from the administrative record whether the Board had reviewed the transcript of the administrative hearing and/or the hearing officer's recommendation before rejecting it; and, second, the judge could not determine how, or upon what basis, the Board made its decision to terminate plaintiff. Pursuant to the circuit court's order, the Board reconsidered plaintiff's case on December 17, 1996. The record

indicates that Vallas was present during this closed session meeting, but plaintiff and his attorney were not allowed to attend. The Board again decided to discharge plaintiff.

On January 8, 1997, the circuit court was advised that the Board, in an executive session on December 17, 1996, reconsidered plaintiff's case and voted to dismiss plaintiff based upon the record of the hearing before the hearing officer. The circuit court ordered the Board to provide an affidavit as to who was present at the executive session on December 17, 1996, as to the Hearne matter and to advise the court as to whether the summary minutes of the December 17, 1996, meeting were approved and when a record of the meeting would be prepared. The Board subsequently filed with the circuit court a "Record Upon Remand" that included, but was not limited to, the following: (1) exhibit G, an affidavit of the Board's assistant secretary stating who was present and what was considered at the closed session meeting regarding the Hearne matter; (2) exhibit H, a communication approved by the Board on December 17, 1996, regarding its final decision to dismiss Hearne and its plan to issue written findings no later than January 3, 1997; (3) exhibit I, the Board's written findings regarding its final decision to dismiss Hearne; and (4) exhibit J, a transcript of the Board meeting on December 17, 1996.

On August 4, 1997, the circuit court granted plaintiff relief on both his administrative review action (count I) and his due process claim (count III). The circuit court found that section 34—85 of the School Code, as amended by Public Act 89—15, was unconstitutional on its face and as applied to plaintiff. In granting plaintiff relief on the administrative review claim contained in count I of his complaint, the court noted:

"This Court read the transcript of proceedings originally when the case came before me the first time, together with all of the exhibits. I also read what I believed at that time to be a very well reasoned and thorough decision of Hearing Officer Lawrence M. Cohen, C-o-h-e-n.

Being disturbed that I did not believe the Board had had the benefit of Mr. Cohen's decision and had actually had a chance to read the transcript, I remanded the matter, quite frankly thinking that anybody who read this transcript, together with the hearing officer's decision, could not possibly find that Mr. Hearne should be subject to discharge.

People disagree. And I am not supposed to reweigh what the Board did. I have examined again in its entirety the decision of the hearing officer and the entirety of the record. And it is clear that there is sufficient evidence in this record to support both discharge and the reinstatement of Mr. Hearne."

Then, the court observed "[i]f this were a case coming to me straight on administrative review from the Board, giving due deference to the administrative agency, I could not say that this decision of the Board is against the manifest weight of the evidence because there is enough in this record *** to support [plaintiff's] discharge." However, the judge believed the language of section 34—85 required her to review the hearing officer's decision. The court reviewed that decision and found that the hearing officer's recommendation of plaintiff's reinstatement was not against the manifest weight of the evidence. Thus, the circuit court granted plaintiff relief on his administrative review claim, reversing the decision of the Board, and ordered that plaintiff be reinstated with back pay and benefits.

The circuit court also ruled that section 34—85 of the School Code as amended by Public Act 89—15 was unconstitutional on its face on due process grounds. The court was troubled by the lack of any statutory language requiring the Board to review the administrative record, review the hearing officer's decision and provide factual findings for its decision. A written order reflecting the trial court's oral ruling granting plaintiff relief on both counts I (administrative claim) and III (constitutional claim) of his complaint was entered on August 5, 1997. The Board then filed a motion to reconsider, claiming that the court improperly reached plaintiff's constitutional claim in count III. On October 12, 1997, the circuit court denied the motion to reconsider.

Both the Board and the Illinois State Board of Education appealed directly to the supreme court as a matter of right pursuant to Supreme Court Rule 302(a) (134 Ill. 2d R. 302(a)). The supreme court, however, did not address the constitutional arguments raised by the parties in this matter. Remanding the case back to the circuit court, the supreme court found that the circuit court improperly reached plaintiff's constitutional claim because it was not essential to the disposition of plaintiff's administrative claim. *Hearne*, 185 Ill. 2d at 456. The supreme court ordered that the circuit court's October 20, 1997, order be vacated and then modified to exclude its ruling finding amended section 34—85 unconstitutional. *Hearne*, 185 Ill. 2d at 457. On March 18, 1999, the circuit court excluded its ruling finding section 34—85 unconstitutional and granted the Board's motion to reconsider its order of August 5, 1997. The court reentered the order granting plaintiff relief on count I. This appeal followed.

## II. ANALYSIS

### A. Circuit Court Is Required to Review Chicago Board's Final Decision

We first address the issue of whether the circuit court in resolving

plaintiff's administrative claim in count I is required to review the decision of the hearing officer or the final decision of the Board. Defendants contend that the circuit court erred in reviewing the decision of the hearing officer as opposed to the decision of the Board. Defendants further contend that the decision of the Board to terminate plaintiff was not against the manifest weight of evidence and thus should be sustained. Plaintiff contends that the trial court properly applied the language of the statute and reviewed the decision of the hearing officer. Because the interpretation of a statute is a legal question, we review the trial court's construction of section 34—85 *de novo*. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 204 (1998).

The principles of statutory interpretation require the court to ascertain and give effect to the true intent and meaning of the legislature. *Chicago School Reform Board of Trustees v. Illinois Educational Labor Relations Board*, 309 Ill. App. 3d 88, 93 (1999). The court will first examine the statutory language and "[w]here the language of a statutory provision is clear and unambiguous, the plain and ordinary meaning of the words will be given effect without resorting to extrinsic aids for construction." *Chicago School Reform Board of Trustees*, 309 Ill. App. 3d at 93-94. When the language is ambiguous, it is appropriate for courts to look beyond the language of the statute and examine the purpose behind the law and the legislative history. *Kunkel v. Walton*, 179 Ill. 2d 519, 533-34 (1997).

In this case, we find the language of amended section 34—85 is ambiguous. Prior to the amendments of Public Act 89—15, section 34—85 of the School Code provided that any tenured teacher subject to a dismissal proceeding could request a hearing before an independent hearing officer. The decision of the hearing officer to retain or dismiss the teacher was final and subject to administrative review. 105 ILCS 5/34—85 (West 1994). Following the enactment of Public Act 89—15, amended section 34—85 still authorized a hearing before an independent hearing officer. However, under amended section 34—85, the hearing officer's finding of facts and decision constitute a "recommendation," and, within 45 days of receiving this recommendation, the Board "shall make a decision as to whether the teacher or principal shall be dismissed from its employ." Pub. Act 89—15, eff. May, 30, 1995 (amending 105 ILCS 5/34—85 (West 1994)). Amended section 34—85 further states "[t]he decision of the board is final unless reviewed as provided in Section 34—85b of this Act." 105 ILCS 5/34—85 (West 1998). This language within section 34—85 vests the Board with the final administrative decision on teacher and principal removal.

The language of amended section 34—85, however, is not completely clear as to whether the circuit court is required to review the decision of the hearing officer or the final decision of the Board. Section 34—85b states that "[t]he provisions of the Administrative Review Law *** shall apply to and govern all proceedings instituted for the judicial review *** of final administrative decisions of the *hearing officer* under sections 34—15 and 34—85" (emphasis added) (105 ILCS 5/34—85b (West 1998)). Moreover, according to amended section 34—85, "if a decision of the *hearing officer* is adjudicated upon review or appeal in favor of the teacher ***, then the trial court shall order reinstatement" (emphasis added) (105 ILCS 5/34—85 (West 1998)). The circuit court relied on this language to conclude that it reviews the decision of the hearing officer and not the Board on administrative review. In effect, this interpretation by the circuit court negates the language of the statute vesting the Board with the final decision on teacher and principal dismissals. According to the circuit court's approach, if a teacher or principal files an administrative review of the decision to terminate, the court reviews the decision of the hearing officer. Under the approach taken by the circuit court in this case, even though the Board makes the final decision to terminate, on administrative review the circuit court would not review the final decision of the Board, but would review the decision of the hearing officer.

■ We reject plaintiff's arguments that the unambiguous terms of the statute mandate a finding that, on administrative review, the circuit court reviews the decision of the hearing officer. The language supporting this interpretation is in complete conflict with the other language in the statute providing that the Board's decision is final and subject to administrative review. The cardinal rule of statutory construction and application is to effectuate the intent of the legislature. *Antunes v. Sookhakitch*, 146 Ill. 2d 477, 484 (1992). "To ascertain the legislative intent, the court must look first to the language of the statute, examining the language of the statute as a whole, and considering each part or section in connection with every other part or section." *Antunes*, 146 Ill. 2d at 484. It is also well settled that statutes should be construed to give them a reasonable meaning and to avoid absurdity or hardship. *Antunes*, 146 Ill. 2d at 486. "A statute will be interpreted to avoid a construction which would raise doubts as to the statute's validity." *Antunes*, 146 Ill. 2d at 486.

■ To ascertain the true intent and meaning of the legislature, we are required to examine the history and course of the legislation and recent legislative action. *Carey v. Elrod*, 49 Ill. 2d 464, 471-72 (1971). We must also give deference to the Board's interpretation of this

ambiguous statute because it is the agency charged with the administration and enforcement of the statute. *Central City Educational Ass'n v. Illinois Educational Labor Relations Board*, 149 Ill. 2d 496, 510 (1992).

■ Both the decision to amend section 34—85 and the legislative history behind the amendment demonstrate a legislative intent to grant the Board the final decisionmaking authority in teacher and principal dismissal proceedings. As noted above, the language of amended section 34—85 vests the Board with the final decisionmaking authority regarding teacher and principal dismissals. Public Act 89—15 amended section 34—85, which had previously vested this authority in the hearing officer. In 1995, Public Act 89—15 was enacted with the express purpose to address an "educational crisis" in the Chicago public schools and to make legislative changes to rectify this crisis. 105 ILCS 5/34—3.3 (West 1996). The legislative history of Public Act 89—15 indicates a similar intent. Legislative debates over Public Act 89—15 discuss that its purpose was to "give considerable power and authority to the Board" (89th Ill. Gen. Assem., Senate Proceedings, May 23, 1995, at 163 (statements of Senator Watson)) and to streamline the teacher dismissal process (89th Ill. Gen. Assem., Senate Proceedings, May 23, 1995, at 164). The overall legislative comments during these debates "confirm that the legislative intent [of] Public Act 89—15 was to grant the [Board] more power in dealing with its schools and its employees." *Chicago School Reform Board of Trustees*, 309 Ill. App. 3d at 97.

Moreover, section 34—85b provides that judicial review should be in accordance with the Illinois Administrative Review Law of the Code of Civil Procedure (735 ILCS 5/3—101 *et seq.* (West 1998)). 105 ILCS 5/34—85b (West 1998). Under the Administrative Review Law, the circuit court only has jurisdiction to review final administrative decisions. 735 ILCS 5/3—105 (West 1998). Both the School Code and the Code of Civil Procedure define an administrative decision as "any decision, order, or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency." 735 ILCS 5/3—101 (West 1998); 105 ILCS 5/34—85b (West 1998). Under amended section 34—85, the decision of the Board in teacher and principal dismissal cases terminates the proceedings before the administrative agency and constitutes the final administrative decision. The Board has interpreted amended section 34—85 to grant it final decisionmaking authority in teacher and principal dismissal cases and to subject its decisions to administrative review. As the Board is the agency charged with the enforcement and administra-

tion of this statute, we must give proper deference to its interpretation of amended section 34—85. Consequently, based on the Board's interpretation of amended section 34—85, together with the legislative history and purpose of Public Act 89—15, we conclude that the legislature intended amended section 34—85 to grant the Board the final decisionmaking authority in teacher and principal dismissal proceedings. On administrative review, the circuit court is required to review the final decision of the Board.

We additionally agree with defendants that the references within the statute to a review of the hearing officer's decision are typographical errors. The circuit court in fact noted that "I think whoever proofread this particular bill missed some important things in [amended] section 34—85. *** [W]hoever put this final bill together failed to correct the sentence in the paragraph that begins 'The hearing officer.' " The circuit court, nonetheless, relied on this language in concluding that the circuit court reviews the decision of the hearing officer. The court's primary goal in construing a statute is to effectuate the intent of the legislature; therefore, we may, when necessary to achieve that intent, " 'alter, supply or modify words and correct obvious mistakes.' " *Village of South Holland v. Chernick*, 233 Ill. App. 3d 860, 863-64 (1992), quoting *People v. Garrison*, 82 Ill. 2d 444, 455 (1980). Based on the legislative intent of amended section 34—85 to streamline and modify the tenured teacher dismissal process, and to give considerable power and authority to the Board, we believe that the references in amended sections 34—85 and 34—85b to an administrative review of the decision of the hearing officer are obvious mistakes that we may correct. These references should not be read so as to negate the legislative intent to make the decision of the Board final and subject to administrative review. Therefore, we interpret amended section 34—85 and section 34—85b of the School Code to require the circuit court to review the final decision of the Board. 105 ILCS 5/34—85, 34—85b (West 1998).

## B. Due Process

We next address the Board's decision to reject the hearing officer's recommendation and terminate plaintiff. When the legislature amended section 34—85 to make the Board the final decision maker in teacher discipline cases, the Board was required to conduct its proceedings in a manner consistent with settled principles of law. The appellate court reviews the record before the administrative agency to determine whether its findings are against the manifest weight of the evidence or whether the agency "acted arbitrarily, without cause, or in a clear abuse of its discretion." *North Avenue Properties, L.L.C. v. Zoning Board of Appeals*, 312 Ill. App. 3d 182, 184 (2000).

■ Although an administrative proceeding must comply with procedural due process, such proceedings may be conducted by hearing officers who make recommendations and refer the case to a decisionmaking board that has not personally heard the evidence. *Ruther v. Hillard*, 306 Ill. App. 3d 997, 1005 (1999). In *Ruther*, both the hearing officer and the police board of the City of Chicago found that plaintiff violated certain departmental rules and regulations and terminated him. On administrative review, the circuit court found that the police board's decision was against the manifest weight of the evidence. On appeal, this court further addressed the issue of whether the plaintiff's procedural due process rights were violated. The court recognized that, when credibility issues are determinative in an administrative proceeding, due process may require that the hearing officer participate in the board's decision and submit a report of the hearing officer's conclusions and impressions. *Ruther*, 306 Ill. App. 3d at 1005. The court, however, found no violation of procedural due process because the hearing officer made an oral report to the police board and the hearing officer conferred with the police board before it rendered its decision. In addition, the record reflected that the police board reviewed all the evidence of the plaintiff's hearing. *Ruther*, 306 Ill. App. 3d at 1005. The court in *Ruther* concluded, "Due process was provided where the Board conferred with the hearing officer and reviewed all the evidence and the transcript of proceedings." *Ruther*, 306 Ill. App. 3d at 1005.

We are mindful of the fact that it is common for the final decision maker in an administrative proceeding to be a commission or board drawn from within the agency, and that due process does not require the commission or board to defer to the finding of a hearing officer. *United States v. Raddatz*, 447 U.S. 667, 680-81, 65 L. Ed. 2d 424, 436, 100 S. Ct. 2406, 2415 (1980). Due process, however, may require sufficient interaction and participation between the hearing officer and the board when the evidence before the hearing officer is in conflict and the resolution of the credibility and weight of the testifying witnesses is the determining factor. *Serio v. Police Board*, 275 Ill. App. 3d 259, 266 (1995) (requirements for procedural due process met where board read transcript, considered the evidence and hearing officer made an oral report and conferred with the board before a decision was reached); *Quincy Country Club v. Human Rights Comm'n*, 147 Ill. App. 3d 497, 500 (1986) ("where credibility is a determining factor in a case, we believe the presiding administrative law judge must participate in the decision").

■ Here, we find based on this record that the Board failed to comply with procedural due process, when without sufficient interac-

tion and participation of the hearing officer upon remand by the trial court, it rejected the decision of the hearing officer, made its own credibility determinations, and terminated plaintiff. This case involved a credibility dispute over whether plaintiff allowed gambling in his classroom and acted improperly during the May 4, 1995, field trip. The state-appointed hearing officer determined that the Board failed to present sufficient evidence to sustain the charges against plaintiff.

The only witness to the alleged gambling was Officer Walker. The Board has the burden of proof at the hearing to establish by a preponderance of the evidence that the conduct or deficiencies for which dismissal is sought occurred as charged. *Board of Education of the City of Chicago v. State Board of Education*, 113 Ill. 2d 173 (1986). The hearing officer found the Board presented "scant evidence" and had "failed to prove by a preponderance of the evidence that Hearne acted with conduct unbecoming a teacher in gross dereliction of his duties." The hearing officer specifically found that plaintiff's testimony, combined with the three students' "credible" and "objective" testimony, rebutted Officer Walker's claim that plaintiff admitted that he allowed gambling in his classroom. According to the hearing officer, "[i]f Walker's testimony is to be believed *** Hearne, an experienced teacher of many years, would have to be presumed to have been so ignorant—or defiant—of his teaching responsibilities and the criminal law that he openly admitted to running a gambling establishment in his classroom and even requested that Walker witness the blatant misconduct. *** The amount of gain to Hearne—two dollars—would not have justified the disastrous consequences. And why, if gambling was a recurrent event in Hearne's classroom, had not that situation surfaced prior to May 8?" Thus, the hearing officer found Walker's testimony defied common sense and everyday experience. The hearing officer also found insufficient evidence to sustain the charge that plaintiff's conduct on the May 4, 1995, field trip regarding payment of the theatre bill and pizza bill was irremediable.

We note the hearing officer concluded that, "[g]iven the evidence presented at the hearing, the Board of Education has failed to prove, by a preponderance of the evidence, that Hearne acted with conduct unbecoming a teacher or in gross dereliction of his duties." However, the hearing officer further indicated the possibility that he could entertain a motion for reconsideration. "There remains, however, Hearne's impending criminal trial. Because those proceedings have not yet concluded, additional evidence could be presented in the criminal proceedings which would alter my recommendation. Accordingly, if the criminal courts conclude, by a more stringent standard than present here, *i.e.*, beyond a reasonable doubt, that Hearne

engaged in criminal activity in his classroom, I would entertain a motion for reconsideration in order to present additional evidence from that case." The record reflects no such motion for reconsideration before the hearing officer.

After the Board met, plaintiff received a letter that, despite the hearing officer's recommendation, the Board decided to terminate plaintiff. The letter further stated that the hearing officer's findings and recommendations were "contrary to the weight of credible evidence presented." In the circuit court plaintiff filed his complaint for administrative review. The Board presented no evidence that it had reviewed the transcripts of plaintiff's hearing or the recommendation of the hearing officer. It only submitted to the circuit court a 1½-page unsigned document titled "Rationale for Board to Reject Hearing Officer's Decision." This document briefly summarized the testimony at the hearing and concluded that plaintiff "should not be a teacher in the Chicago Public School System."

The circuit court, as a result of concerns relating to due process, remanded the case with instructions that the Board should review the recommendations of the hearing officer and indicated: "On remand the Chicago School Reform Board is to receive and review the Hearing Officer's decision. If the Board deems appropriate the Board will consider the record of the hearing before the Hearing Officer. If the Board considers anything in addition to the record of the case before the hearing officer, then it shall give the other side notice and an opportunity to be heard."

Following remand, the Board on December 17, 1996, again decided to terminate plaintiff. The Board rejected the hearing officer's finding that plaintiff did not act with conduct unbecoming a teacher or in gross dereliction of his duties. The Board also rejected the recommendation of the hearing officer that plaintiff should be reinstated. The Board appeared before the circuit court on January 8, 1997, and advised the circuit court that the Board once again considered and voted to dismiss plaintiff. The circuit court ordered the Board to provide an affidavit as to who was present at the December 17, 1996, meeting and to advise the court as to whether the minutes of the meeting were approved and when a record of the meeting would be prepared. As the result of the court order, the Board eventually submitted various documents to the circuit court allegedly generated by the December 17, 1996, meeting.

The Board submitted to the circuit court a one-page document entitled "Communication Re: Hearne v. Board of Education" indicating that it met on December 17, 1996, and considered the "record before the hearing officer, but they have not considered anything in

addition to the record of the case before the hearing officer." That unsigned document was part of exhibit H and was dated December 17, 1996. Attached to that document was a certification from the secretary of the board of education that "said Communication was presented to and approved by the Board of Education *** on the 17th day of December 1996." However, the secretary's certification that the "Communication" was a "true copy" was dated March 10, 1996. Thus, the date of the certification regarding the accuracy of the document entitled "Communication" predated the actual existence of the document by nine months.

We further note the Board produced a half-page document that was unsigned, undated, did not contain a case caption, title, statement of facts, or legal analysis. This half-page document, exhibit I, summarized the results of the December 17, 1996, meeting of the Board, indicating that "The Trustees discussed Hearne v. Board of Education" and "That discussion was precipitated by Judge Kinnaird's order of November 18, 1996, which was reviewed by the Trustees." The document recognized that Judge Kinnaird required written findings and referenced the fact that at the December 17, 1996, meeting the trustees rejected the hearing officer's recommendation to reinstate Hearne. The document generated as the result of the December 17, 1996, meeting contained six written findings as the basis for the trustees' rejection. The secretary for the Board certified that this document was "a true and correct copy of Findings now on file in my office, and The Board made written findings in the matter of Joseph Hearne to reject the hearing officer's recommendation of reinstatement." However, the certification by the secretary attached to the half-page document indicated the findings were presented to and approved by the Board on April 24, 1996, eight months before the written findings were made as the result of the December 17, 1996, meeting.

The certifications of the documents produced as the result of the December 17, 1996, meeting raise questions about the nature of the process afforded Hearne by the Board. These questions are significant in light of the fact that the documents, including the certifications, were submitted to the court as the result of the court's questions regarding the process afforded plaintiff. Moreover, the substance of the unsigned, undated, half-page document which appears to have been generated by the December 17, 1996, meeting of the trustees, although certified as having been presented to the Board in April 1996, presents further problems. In that document the trustees indicated their rejection of the hearing officer's decision to reinstate Hearne was based on the following findings:

"The preponderance of the evidence showed that Hearne acted

with conduct unbecoming a teacher and in gross dereliction of his duties.

The hearing officer erred in concluding that Hearne's conduct on the May 4 field trip to ETA and Shakey's Pizza was not irremediable action warranting his dismissal.

The preponderance of the evidence showed that Hearne improperly conducted himself and gambled in class with his students on May 8.

The hearing officer erred in finding that the testimony of Austin High School security officer Walker was rebutted by Hearne and by three of his students.

The hearing officer erred in finding that the three students were 'credible, objective witnesses.'

The hearing officer erred in reasoning that Hearne did not gamble with his students because an experienced teacher of many years could not be 'presumed to have been so ignorant' of his responsibilities or the law."

The Board indicated that "the trustees have considered the record of the hearing before the hearing officer, but they have not considered anything in addition to the record of the case before the hearing officer." The Board also stated that "the trustees have received and reviewed the hearing officer's decision." We are mindful that the Board "received and reviewed" the hearing officer's decision. Although the Board considered the record before the hearing officer, the Board reweighed and reevaluated the credibility of the witnesses. The credibility of plaintiff, Officer Walker, and the three students was the determining factor in this case; therefore, it was incumbent on the Board to have conferred with the hearing officer on the issue of credibility. *Ruther*, 306 Ill. App. 3d at 1005; *Quincy*, 147 Ill. App. 3d at 500. The hearing officer personally observed the witnesses testify and was in the best position to judge their credibility and weigh their testimony. The Board reweighed the evidence, substituted its determination of the credibility of the witnesses and substituted its judgment for that of the hearing officer. The Board entirely rejected the hearing officer's credibility findings as follows: "The hearing officer erred in finding that the testimony of Austin High School security officer Walker was rebutted by Hearne and by three of his students. The hearing officer erred in finding that the three students were 'credible, objective witnesses.' "

In rejecting the finding and recommendation of the state-appointed hearing officer, the Board did not indicate that it conferred with the hearing officer or that the hearing officer participated in the Board's decision. We conclude, in the particular factual context of this case, the record does not reflect sufficient interaction and participation of

the hearing officer to satisfy procedural due process. We are not saying that due process requires the commission or board to defer to the findings of a hearing officer. We are not saying that the hearing officer should participate in the decisionmaking process of the board in every case or that the board should confer with the hearing officer in every case where the board rejects the recommendation of the hearing officer. However, where credibility is the determining factor and where as in this case the final decisionmaking body reverses each and every credibility finding of the hearing officer, we believe the hearing officer should participate in the decisionmaking process and the board should confer with the hearing officer. *Quincy*, 147 Ill. App. 3d at 500; *Ruther*, 306 Ill. App. 3d at 1005.

A fair hearing before an administrative agency includes "the opportunity to be heard, the right to cross-examine adverse witnesses, and impartiality in ruling upon the evidence." *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 95 (1992); see also *Van Harken v. City of Chicago*, 305 Ill. App. 3d 972, 983 (1999) ("the essence of due process is based on the concept of fundamental fairness"). If the procedures used by an administrative agency violate fundamental fairness and a party's due process rights, the appellate court should reverse the agency's decision. *Dimensions Medical Center, Ltd. v. Elmurhst Outpatient Surgery Center, L.L.C.*, 307 Ill. App. 3d 781, 795 (1999).

In this case the record reflects that the state-appointed hearing officer afforded plaintiff a fair hearing consistent with due process where plaintiff cross-examined the witnesses against him, presented evidence in his defense, and received fair and impartial rulings on evidentiary disputes. After hearing all the evidence, the hearing officer, consistent with due process, submitted a signed and dated written report consisting of 13 pages, noting the charges and providing five pages of factual findings. The report also included a five-page legal analysis applying the law to the facts. The hearing officer provided a detailed and well-reasoned decision, finding insufficient evidence to sustain the Board's charges against plaintiff. We, however, cannot reach the same conclusion regarding the Board's reversal of the hearing officer's decision and termination of plaintiff.

The Board produced a half-page document with six conclusory findings. This document lacks a case caption, a statement of the facts, legal analysis, and any substantive discussion on why the Board chose to reject every single factual and legal finding that the hearing officer made. It is unsigned and undated. The certification indicates the findings in the document generated as the result of the meeting of the trustees on December 17, 1996, were "presented to and approved by"

the Board April 24, 1996, eight months before the trustees made the findings. The record provides no explanation as to how written findings generated as the result of the December 17, 1996, meeting could have been presented and approved by the Board eight months earlier on April 24, 1996.

We conclude that, based on the totality of the circumstances, the Board in applying section 35—84 of the School Code as amended by Public Act 89—15 did not sufficiently comply with the principles of due process by failing to confer with the hearing officer where credibility was the determinative factor in the final decision of the Board. The Board's written findings in this case provides further evidence that the Board acted arbitrarily because the untitled and unsigned document containing those findings lacks any substantive discussion of the evidence and controlling legal principles. The various certifications of documents allegedly generated as the result of the December 17, 1996, meeting raise unanswered questions about the process afforded plaintiff. Applying principles of fundamental fairness and due process, we therefore find that based on the totality of the circumstances plaintiff is entitled to relief on count I of his complaint for administrative review.

Having found that plaintiff is entitled to relief on count I of his complaint, we need not address plaintiff's cross-appeal that section 34—85 as amended by Public Act 89—15 is unconstitutional. "[I]t is well established that questions regarding the constitutionality of statutes should be considered 'only where essential to the disposition of a case, *i.e.*, where the case cannot be determined on other grounds.' " *Hearne*, 185 Ill. 2d at 454, quoting *Bonaguro v. County Officials Electoral Board*, 158 Ill. 2d 391, 396 (1994).

### III. CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

TULLY and GALLAGHER, JJ., concur.