# Illinois Official Reports

## Appellate Court

<div style="border:1px solid black">

*Weaver v. Board of Education of the City of Chicago*, 2017 IL App (1st) 161764

</div>

| | |
|---|---|
| Appellate Court Caption | MARY WEAVER, Petitioner, v. THE BOARD OF EDUCATION OF THE CITY OF CHICAGO *et al.*, Respondents. |
| District & No. | First District, Second Division<br>Docket No. 1-16-1764 |
| Filed | April 11, 2017 |
| Decision Under Review | Petition for review of Board Resolution No. 16-0525-RS-6 of the Board of Education of the City of Chicago. |
| Judgment | Affirmed. |
| Counsel on Appeal | Dolan Law Offices, P.C., of Chicago (Martin A. Dolan, Karen Munoz, and Donald Ivansek, of counsel), for petitioner.<br><br>Law Department of Board of Education of the City of Chicago, of Chicago (Ronald L. Marmer and Lee Ann Lowder, of counsel), for respondents. |
| Panel | JUSTICE MASON delivered the judgment of the court, with opinion.<br>Presiding Justice Hyman and Justice Pierce concurred in the judgment and opinion. |

**OPINION**

¶ 1     Mary Weaver was a contract principal at Jonathan Y. Scammon Elementary School in Chicago. On December 28, 2015, the Chicago Board of Education informed Weaver that she was being "reassigned to home" as the result of a "substantiated investigation" conducted by the Board's Inspector General. Weaver continued to receive her pay and benefits following her reassignment. Two months after her reassignment, Weaver applied for and was granted leave pursuant to the Family and Medical Leave Act of 1993 (FMLA) (29 U.S.C. § 2601 *et seq.* (2012)).

¶ 2     On April 1, 2016, while on leave, Weaver received a letter from Forrest Claypool, the Board's Chief Executive Officer.[1] The letter informed Weaver that the Board had approved charges against her and enclosed the written charges and details supporting those charges. Among other things, the Board charged that Weaver (i) falsified student attendance data to inflate the student attendance rate, which, in turn, enabled Scammon Elementary to obtain a higher school quality rating; (ii) instructed teachers to cheat on a corporate-sponsored contest by completing activities that students were required to complete; (iii) improperly used sick time for vacation and falsely reported vacation plans to her supervisor; (iv) interrogated, harassed, or intimidated Scammon staff members engaged in protected activities under the Illinois Educational Labor Relations Act (115 ILCS 5/1 *et seq.* (West 2014)); and (v) mismanaged Scammon elementary by (1) failing to ensure that bilingual teachers had bilingual materials and conducted classes in Spanish for non-English speaking students, (2) improperly administering the Individualized Education Program for various students, (3) paying excessive overtime to select employees, and (4) allowing personnel that were not properly certified to teach classes.

¶ 3     Claypool's letter further advised Weaver:

> "*Pursuant to statute, a dismissal hearing has been tentatively scheduled for April 29, 2016. However, you will be dismissed from your employment with the Board of Education of the City of Chicago and no hearing on the charges will be held, unless, within seventeen (17) calendar days after receiving this notice, you request in writing of the Chief Executive Officer that a dismissal hearing be scheduled on the charges.* If you wish to request a hearing on the charges, please direct your written communication to Mr. Ronald L. Marmer, General Counsel, Board of Education of the City of Chicago, Law Department, 1 N. Dearborn Street, Suite 900, Chicago, Illinois 60602." (Emphasis in original.)

The letter informed Weaver that pending a termination hearing, Claypool was requesting that she be suspended without pay and that she would be afforded a pre-suspension hearing to be held in the Board's Office of Employee Engagement. Weaver was also advised that she would receive notice of the date and time of the pre-suspension hearing from the Office of Employee Engagement.

¶ 4     As Claypool's letter indicated, Weaver was separately contacted by the Office of Employee Engagement. On April 1, 2016, Thomas Krieger, Manager of Employee

---

[1]The mayor of the City of Chicago appoints the Board's Chief Executive Officer, who has the power and duties of a general superintendent under the School Code. 105 ILCS 5/34-3.3(b) (West 2014).

Engagement, advised Weaver in a letter that her pre-suspension hearing would take place on Friday, April 8, 2016, at 10:30 a.m. in his office.

¶ 5 Weaver received the letters on April 1. That same day, James Ciesil, the Board's Deputy General Counsel, advised Weaver's attorney, Martin Dolan, via email, of the scheduled pre-suspension hearing. Dolan promptly responded to Ciesil's email indicating that he was expecting to start a trial on Monday, April 4, 2016, and therefore, he requested that the April 8 hearing be postponed. Dolan also stated: "As you know, Ms. Weaver is on FMLA leave." Ciesil responded that he would agree to a short continuance and advised Dolan to choose any day during the following week for the pre-suspension hearing. Dolan promised to give Ciesil dates on Monday.

¶ 6 When Ciesil did not hear from Dolan on April 4, he sent an email the following day advising Dolan that he suggested rescheduling the pre-suspension hearing for Friday, April 15, at 9:30 a.m.

¶ 7 On Wednesday, April 6, Dolan advised Ciesil that Weaver would be on medical leave until May 25, 2016, and that "[n]o pre-suspension hearing or dismissal hearing can take place until her leave is over at a minimum." Dolan also advised Ciesil that, given the extensive charges against Weaver, he would need to obtain documents relating to the charges from the Board. After indicating that "more time is necessary on our end," Dolan stated, "[i]f we need to contact Ronald Marmer [the Board's General Counsel] directly please advise."

¶ 8 Ciesil responded to Dolan's email the same day. Ciesil explained to Dolan that the Board does not wait for an employee to come off leave before setting a pre-suspension hearing and that the Board was unwilling to wait until after May 25 to schedule Weaver's pre-suspension hearing. Ciesil stated: "If I do not hear back from you by tomorrow, I will have the pre-suspension hearing automatically scheduled for Friday April 15, 2016."

¶ 9 Ciesil went on to address the purpose of the pre-suspension hearing:

"The pre-suspension hearing is to comply with the *Loudermill* [*Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985)] requirements of notice and an opportunity to be heard. *Loudermill* does not require that I turnover all my documents relevant for the case before the pre-suspension hearing. Moreover, the [Illinois State Board of Education] regulations, which govern principal discharge hearings, have a detailed discovery process. I fully intend on complying with the ISBE discovery rules which [do] not require the turning over of documents until after the ISBE hearing officer grants a party's motion for discovery.

The formal dismissal hearing in this case will not be set until after the parties have selected a hearing officer. Undoubtedly, the actual discharge hearing will take place several months from now. That should give you plenty of time to serve discovery requests on me and prepare for hearing."

Ciesil told Dolan that if Dolan wanted to contact Marmer directly regarding the foregoing matters, he was welcome to do so, but that Ciesil was sure Marmer "will just refer this matter back to me."

¶ 10 Dolan responded the same day, stating that Ciesil was violating the FMLA and going on to say that he was not available on April 15, but that he would give Ciesil "more information" by Friday, April 8.

¶ 11    The record contains no further communication between Ciesil and Dolan. A pre-suspension hearing was never held due to Dolan's failure to provide Ciesil with a date for the hearing. The record does not indicate whether or when Weaver was suspended without pay. Weaver further failed to submit a written request for a dismissal hearing within 17 days of receipt of the Board's April 1, 2016, letter or at any time thereafter.

¶ 12    On May 25, 2016, the Board passed a resolution terminating Weaver's employment. The resolution recited that the Board had not received a written request for a dismissal hearing from Weaver or anyone acting on her behalf. Ciesil forwarded the resolution to Dolan on May 26 with a letter that also advised Weaver of her right to seek judicial review.

¶ 13    Dolan responded to Ciesil's letter on June 3, 2016. Dolan took the position that the Board's conduct in dismissing Weaver while she was on leave violated the FMLA. Dolan stated: "We continuously provided timely notice to you with respect to her leave and willingness to schedule a hearing after she returned. Despite our communications, the Board chose to go down the route it had, and we have no option but to litigate the wrongful termination in court." Dolan did not inform the Board that he or his client had been confused by the communications they had received or misled into believing that Weaver was excused from submitting a written request for a dismissal hearing.

¶ 14    Ciesil responded, pointing out that in light of the lapse of two months between Weaver's removal from Scammon Elementary and her request for medical leave, there was no apparent connection between the two. He pointed out that federal law allows an employer to terminate an employee on leave as long as the employer would have discharged the employee anyway for legitimate reasons other than the absence. Finally, he asserted that a timely written request for a dismissal hearing is a jurisdictional requirement under Illinois law and, given Weaver's failure to make such a request, the Board was entitled to terminate her without a hearing.

¶ 15    Weaver filed her complaint for administrative review in this court. See 105 ILCS 5/34-85(a)(8) (West 2014) (providing for judicial review of teacher dismissals under the Administrative Review Law by petition filed in the appellate court). The Board filed a motion to dismiss, arguing that Weaver failed to exhaust her administrative remedies by requesting a dismissal hearing, and so deprived this court of jurisdiction. We took the Board's motion with the case.

¶ 16    Section 34-85 of the School Code provides that "[n]o hearing upon [dismissal] charges is required unless the teacher or principal within 17 calendar days after receiving notice requests in writing of the general superintendent that a hearing be scheduled." 105 ILCS 5/34-85(a)(2) (West 2014). It is undisputed that Weaver failed to submit a written request for a hearing either within the time set forth in Claypool's April 1, 2016, letter or at any later time. Thus, on May 25, 2016, the Board entered a resolution dismissing Weaver based on its finding that the dismissal charges of April 1, 2016, were "true and correct." Following this resolution, there was no further opportunity for review with the agency. 105 ILCS 5/34-85(a)(7) (West 2014); see also *Hearne v. Chicago School Reform Board of Trustees of the Board of Education for the City of Chicago*, 322 Ill. App. 3d 467, 477 (2001) ("[T]he decision of the Board in teacher and principal dismissal cases terminates the proceedings before the administrative agency and constitutes the final administrative decision."). Accordingly, we conclude that Weaver, though she failed to request a hearing, did in fact exhaust her administrative remedies, and we deny the Board's motion to dismiss.

¶ 17    But while Weaver's failure to request a dismissal hearing does not mandate dismissal of her appeal, it certainly limits both the scope of our review and the relief we can afford her. Weaver's failure to request a hearing pursuant to section 34-85 of the School Code severely circumscribes our review of her dismissal order, given that there is no administrative record on the merits of the Board's decision. But here, Weaver does not contest the substantive findings of the Board; instead, she seeks what she characterizes as a "non-substantive" reversal of her termination on the ground that the method by which the Board accomplished her removal violated her due process rights, and she requests a remand to the Board with directions to conduct an evidentiary hearing on the charges against her. The record is sufficient to permit us to review these claims.

¶ 18    Initially, we note that Weaver has abandoned the position she took when first advised of her dismissal, *i.e.*, that no pre-suspension or dismissal hearing could be scheduled while she was on FMLA leave. Ciesil correctly informed Dolan that the FMLA does not prohibit an employer from dismissing an employee when reasons—apart from the FMLA leave—support that action. See *Simpson v. Office of the Chief Judge*, 559 F.3d 706, 714-15 (7th Cir. 2009) (defendants' conduct in terminating plaintiff's employment while plaintiff was on medical leave did not violate FMLA because charges of wrongdoing leveled against plaintiff justified her termination, regardless of her leave); *Kohls v. Beverly Enterprises Wisconsin, Inc.*, 259 F.3d 799, 805 (7th Cir. 2001) ("an employee may be fired for poor performance when she would have been fired for such performance even absent her leave").

¶ 19    Notwithstanding her failure to pursue this argument on appeal, Weaver's brief alludes to "doctor's orders" to avoid stress. In the same vein, Weaver also references her claim that the charges against her were politically motivated because she "spoke out" against Mayor Emanuel. None of these assertions is supported by any evidence in the limited record before us, and therefore, we disregard them.

¶ 20    Changing tack, Weaver now argues that she was confused and misled by the communications she received from the Board and by its counsel's communications with her attorney.

¶ 21    We do not understand how Weaver could have been confused by the two letters she received on April 1, 2016. The first letter from the Board's CEO Claypool informed Weaver that the Board had approved charges against her and advised her of the tentative date set for her dismissal hearing. That letter further indicated that pending the dismissal hearing, Claypool proposed that Weaver be suspended without pay and that she would be afforded a pre-suspension hearing. As to the latter hearing, Claypool told Weaver that she would be contacted separately by the Office of Employee Engagement, which she was. Given that it is commonly understood that a suspension without pay and a dismissal from employment are two distinct employment actions, the only way Weaver could have failed to appreciate the import of the two letters is if she failed to read them. Moreover, it is clear that her attorney understood that there would be two different hearings as he specifically informed Ciesil (wrongly, as it turns out) that "[n]o *pre-suspension hearing or dismissal hearing* can take place until her leave is over." (Emphasis added.) Given that the letters from Claypool and the Office of Employee Engagement clearly advised Weaver of two separate hearings, we reject her argument that these communications were misleading.

¶ 22    Further, Weaver does not explain how she could have overlooked the indented and underscored language in Claypool's letter that plainly advised her that she would be dismissed

- 5 -

from her employment and no hearing would be held unless within 17 days of Claypool's letter, Weaver made a written request for a hearing directed to the Board's General Counsel. She nevertheless contends that her attorney's communications with Ciesil led her and her attorney to believe that she was excused from requesting a dismissal hearing in writing. She thus seeks to estop the Board from relying on her failure to submit a written request for a dismissal hearing.

¶ 23    Generally, to make out a claim for detrimental reliance or promissory estoppel, the party asserting the claim must allege facts supporting each of the following elements: (i) an unambiguous promise, (ii) detrimental reliance on that promise, and (iii) reliance that was expected and foreseeable by the person making the promise. *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 233 Ill. 2d 46, 51 (2009). The circumstances under which an individual can justifiably rely on oral representations by a government employee to excuse failure to comply with statutory requirements are rare. As our supreme court recently observed in *Matthews v. Chicago Transit Authority*, 2016 IL 117638, ¶ 94: "Illinois courts have consistently held that the doctrine of equitable estoppel will not be applied to governmental entities absent extraordinary and compelling circumstances." Compelling circumstances may include the need to prevent fraud and injustice. *Boswell v. City of Chicago*, 2016 IL App (1st) 150871, ¶ 31.

¶ 24    We do not believe Weaver's case presents extraordinary or compelling circumstances, but even assuming that the doctrine of promissory estoppel is applicable, Weaver's claim nevertheless fails. There is no evidence that the Board unambiguously promised that a dismissal hearing would be held in the absence of a formal request by Weaver within the appropriate time frame, nor is there evidence that the Board could have reasonably foreseen Weaver's reliance on that alleged promise.

¶ 25    To support her claim for estoppel, Weaver relies heavily on Ciesil's statements in his April 6 email to Dolan. Specifically, in that email, Ciesil explained that Dolan was not entitled to discovery until Dolan made a motion before a duly appointed hearing officer. Then, Ciesil stated "[t]he formal dismissal hearing in this case will not be set until after the parties have selected a hearing officer. Undoubtedly, the actual discharge hearing will take place several months from now." While Weaver claims that she read these statements to mean that she need not comply with the April 1 directive to make a written request for a hearing directed to Marmer, the Chief Executive Officer, Ciesil's statements cannot be read in isolation. The parties had been discussing scheduling the *pre-suspension* hearing. Ciesil only referenced the dismissal hearing (that he reasonably assumed Weaver would request) to explain why he was not required to turn over the documents Dolan requested at this stage and why the pre-suspension hearing could go forward without this discovery. He did not unambiguously promise to hold the dismissal hearing without a written request from Weaver to Marmer within the statutory time frame.

¶ 26    Similarly, Ceisil's statement in the same email, implying that an attempt by Dolan to "to go over [Ciesil's] head" and contact Marmer would be futile, when read in context, simply responded to Dolan's question asking whether he needed to call Marmer regarding obtaining more time to prepare for the pre-suspension hearing. The statement in no way suggested that Weaver did not need to contact Marmer for the separate purpose of requesting a dismissal hearing.

¶ 27    For these reasons, we find Weaver's estoppel argument meritless. Weaver's failure to make a timely request for a dismissal hearing to the appropriate party is not excused by the Board's conduct, and she is not entitled to the relief she seeks.

¶ 28    Affirmed.